UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 08 CR 256 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| BENNIE WILCOX, | ) | |

**MEMORANDUM AND ORDER**

The court previously sentenced defendant Bennie Wilcox to a term of imprisonment of 12 months and 1 day after a jury convicted him on six counts of sending or posting threatening messages. The government also asked the court to order Wilcox to pay restitution based upon the damages allegedly suffered by Wilcox's victim, Kaplan University. At sentencing the court stated that the victim impact statement submitted to substantiate Kaplan's expenses lacked sufficient details to allow the court to determine the appropriate amount of restitution. The court ordered additional briefing and documentation, which the parties have now provided. For the reasons that follow, the court intends to order an amount of restitution, but cannot make a final determination as to the amount pending additional details of the victim's losses.

**ANALYSIS**

The government has asked the court to award restitution under the Mandatory Victims Restitution Act. The Mandatory Victims Restitution Act requires courts to order defendants of certain crimes of violence or against property to make restitution to the victims of the offense. *See* 18 U.S.C. § 3663A. Under the MVRA, the court must order the defendant to pay the value of any property that has been damaged or lost, *see* 18 U.S.C. § 3663A(b)(1), for treatment and lost income attributable to any bodily injury suffered, *see* 18 U.S.C. § 3663A(b)(1), and to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," *see* 18 U.S.C. § 3663A(b)(4). The Seventh Circuit has noted that "[t]his measure of relief is less generous than common law damages, since it does not extend to consequences beyond the diminution of the value of the property stolen or damages." *United States v. Scott*, 405 F.3d 615, 618 (7th Cir. 2005). Thus, the purpose of restitution is the "restoration of something that the defendant had taken from the [victim], including a profit." *Id.* at 619.

Kaplan's victim impact statement identifies several categories of damages it contends it incurred and which the government contends should be included in the court's restitution order. The court addresses each category in turn.

**I.     INTERNAL COSTS ($205,358.46)**

Kaplan has identified $205,358.46 in internal costs it incurred as a result of Wilcox's crimes. Those costs include time (1) in-house attorneys spent helping to formulate a response to Wilcox's e-mails and postings, (2) human resources, student relations, admissions, and public relations personnel spent developing communications to ease the concerns of employees, students, prospective students, and the public, (3) security personnel guarded Kaplan's offices and members of management, and (4) technology personnel spent reviewing network data, deploying additional security measures, and round-the-clock analysis and testing of Kaplan's computers. Kaplan contends that all of these costs were incurred because of Wilcox's threats to take down Kaplan's computers, to harm members of management, and to steal the identities of its students.

In order to assess whether Kaplan incurred costs or lost profits because of the work its employees performed in response to Wilcox's offense, the court must know whether Kaplan incurred costs beyond what it would normally have paid its employees, even if Wilcox had not sent threatening e-mails and messages, or what profits were lost because employees were unable to perform their normal assignments. Without such information, the court would be forced to engage in sheer speculation, which would be at odds with its obligation to award restitution based upon a preponderance of the evidence. *United States v. Donaby*, 349 F.3d 1046, 1053 (7th Cir. 2003).

Kaplan has described hundreds of hours of work performed by its employees, and stated that these employees would have spent their time performing other duties had they not been forced to address the concerns raised by Wilcox's e-mails. However, it has not detailed what those other duties were, whether they were eventually performed, or whether it lost profit because the work was never performed. As for employee expenses, the only employees Kaplan contends were compensated for work "over and above [their] normal workweek" were the 7 employees with responsibility for human resources and employee services, who spent a total of 152 hours responding to Wilcox's offense, though Kaplan does not identify what portion of those 152 hours consists of overtime.

Accordingly, the court cannot award restitution based upon Kaplan's reported internal costs at this time and, instead, directs the government to provide more detailed support for its request for restitution. The scope of the government's submission shall be limited to the following: (1) the profits Kaplan lost because of employees who responded to Wilcox's offense rather than performed their normal assignments, and (2) the amount that human resources and employee services personnel were compensated beyond what they would normally have earned.

**II.    K&L GATES ($57,200.44)**

The government also seeks restitution based upon fees Kaplan paid to the law firm of K&L Gates. According to Kaplan, it paid K&L Gates $57,200.44 in legal fees in order to issue

third-party subpoenas as part of its investigation into the source of the threatening e-mails and messages Wilcox sent. Kaplan contends that K&L Gates also coordinated with the FBI in obtaining documents through discovery in third-party actions.

Wilcox objects to these costs because he confessed on June 18, 2007, and therefore investigative costs incurred after that date could not have been carried out to determine who sent the e-mails but, rather, must have been incurred in response to the *qui tam* civil proceeding Wilcox initiated as a whistle blower against Kaplan.

Under the MVRA, restitution is awarded based not only on the costs to investigate the defendant's offense, but also for costs incurred while participating in the prosecution of the offense. *See* 18 U.S.C. § 3663A(b)(4). Thus, restitution may be awarded not only for investigative costs incurred through June 18, 2007, when Wilcox confessed, but also for Kaplan's participation in the prosecution of Wilcox following the confession. In addition, just because Wilcox confessed does not make any investigative work performed after his confession unreasonable because a defendant can later recant his confession, as Wilcox demonstrated.

Accordingly, the government has established that the costs Kaplan incurred as a result of the legal fees it paid K&L Gates fall within the scope 18 U.S.C. § 3663A(b)(4). In addition, the fees appear to be reasonable given the breadth of Wilcox's threats, which targeted not only Kaplan's computers, but also its executives and the entire student body. Accordingly, the fees paid K&L Gates shall be included in the court's restitution order.

### III.    DLA PIPER ($12,349.87)

Next, the government seeks an order of restitution based upon the $12,349.87 in legal fees Kaplan paid DLA Piper. According to Kaplan's victim impact statement, these fees were incurred in third-party actions filed in order to obtain subpoenas to investigate the source of the threatening e-mails and messages, as well as correspondence with the FBI.

Wilcox objects because the billing records indicate that DLA Piper billed for legal proceedings in DuPage County that appear to be unrelated to this criminal proceeding, and for participation with the FBI and U.S. Attorney's Office in the criminal prosecution of Wilcox.

Wilcox's objections are unfounded. First, according to the government, the third-party proceedings that Kaplan pursued in order to investigate the source of the threats were initiated in DuPage County and, therefore, legal work performed in the proceedings in DuPage County were part of Kaplan's investigation of Wilcox's offense. Second, under the MVRA, restitution is awarded based not only on the victim's participation in the investigation of the defendant's offense, but also for the victim's participation in the resulting prosecution. *See* 18 U.S.C. § 3663A(b)(4).

Accordingly, the government has established that the costs Kaplan incurred as a result of the legal fees it paid DLA Piper fall within the scope 18 U.S.C. § 3663A(b)(4). In addition, the fees appear to be reasonable given the breadth of Wilcox's threats, which targeted not only Kaplan's computers, but also its executives and the entire student body. Accordingly, the fees paid DLA Piper shall be included in the court's restitution order.

## IV.     KROLL, INC. ($148,443.50)

Next, the government seeks restitution for the security expenses Kaplan paid Kroll, Inc. to investigate the source of the threatening e-mails and messages and to arrange for security guards posted at the homes of the Kaplan executives threatened. Wilcox objects, arguing that expenses incurred by "organizations dedicated to providing physical security services . . . cannot constitute restitution." Memorandum [141-1] at 17.

Under the relevant portion of the MRVA, restitution consists of "expenses incurred during participation in the investigation or prosecution of the offense." The government has failed to explain how expenses incurred in providing guards for Kaplan executives fell within the scope of "participation in the investigation or prosecution of the offense." Nor has it provided any authority finding that such services fall within the scope of 18 U.S.C. § 3663A(b)(4).

However, according to Kaplan's victim impact statement, Kroll, Inc. provided not only security guards for company executives, but also investigative services such as assembling a computer forensics team, identifying possible perpetrators connected to Benedictine University, and planning for surveillance of potential perpetrators. Courts have found that investigative costs to detect a perpetrator and the extent of his offense fall within the scope of 18 U.S.C. § 3663A(b)(4). *See Untied States v. Hoskins*, 567 F.3d 329, 332 (7th Cir. 2009) (expenses bank incurred in unraveling an employee's embezzlement scheme fell within scope of 18 U.S.C. § 3663A(b)(4)); *see also United States v. Batti*, 631 F.3d 371 (6th Cir. 2011) (expenses incurred conducting surveillance of defendant, even after law enforcement had begun its own investigation, were properly included in award of restitution).

The invoices of Kroll, Inc. that Kaplan attached in support of its victim impact statement are so heavily redacted that the court cannot discern which expenses were incurred in guarding company executives, and which were incurred during Kaplan's participation in the investigation or prosecution of Wilcox's offense. Accordingly, the court cannot award restitution based upon the work performed by Kroll, Inc. at this time and, instead, directs the government to provide more detailed support for its request for restitution. It shall also provide authority for its position that expenses for security details fall within the scope of 18 U.S.C. § 3663A(b)(4).

V.      **NAVARRO SECURITY ($144,542.56)**
        **PINKERTON CONSULTING ($27,205.90)**
        **U.S. EQUITIES REALTY ($13,903.75)**

The government also seeks restitution based upon the total amount of $185,652.21 Kaplan paid to Navarro Security, Pinkerton Consulting, and U.S. Equities Realty to provide security at its facilities and for its company executives. However, as discussed above, the government has presented no authority for its position that expenses incurred for security details falls within the scope of "expenses incurred during participation in the investigation or prosecution of the offense."

Accordingly, the government shall provide authority for its position that expenses for security details fall within the scope of 18 U.S.C. § 3663A(b)(4).

VI.     **DIVERSIFIED MANAGEMENT RISK ($20,552.73)**

Finally, the government seeks restitution based upon the $20,552.73 Kaplan paid to Diversified Management Risk for surveillance and work identifying the perpetrator of the threatening e-mails and messages. As discussed above, such expenses fall within the scope of 18 U.S.C. § 3663A(b)(4). In addition, the fees appear to be reasonable given the breadth of Wilcox's threats, which targeted not only Kaplan's computers, but also its executives and the entire student body. Accordingly, the fees paid Diversified Management Risk shall be included in the court's restitution order.

**CONCLUSION**

For the reasons stated, the court intends to order an amount of restitution, but cannot make a final determination as to the amount pending additional details of the victim's losses. *See Dolan v. United States*, 130 S. Ct. 2533, 2537 (2010) ("[A] sentencing court that misses the 90-day deadline [to order restitution] nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."). The government shall file a supplemental memorandum in support of its request for restitution limited in scope as follows: (1) the profits Kaplan lost because of employees who responded to Wilcox's offense rather than performed their normal assignments; (2) the amount that human resources and employee services personnel were compensated beyond what they would normally have earned; (3) the amount billed by Kroll, Inc. that represents investigative and surveillance services; and (4) authority whether expenses for security details fall within the scope of 18 U.S.C. § 3663A(b)(4).

The court will set a briefing schedule during the previously-scheduled September 27, 2011, status hearing.


ENTER:

DATE: September 27, 2011
                                               _____
                                               Blanche M. Manning
                                               United States District Judge